# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICIO PABA SERJE, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>RAPPI, INC., et al.,<br><br>        Defendants. | Case No. 19-cv-07415-VC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 41 |

       This is a misappropriation of trade secrets case, with one claim under the federal Defend Trade Secrets Act and one claim under the California Uniform Trade Secrets Act. Colombian plaintiffs Mauricio Paba Serje, Jose David Mendoza Macanaz, and Jorge Uribe allege that a Colombian citizen, Simón Borrero Posada, acquired their trade secrets when they hired his Bogotá-based digital services company, Imaginamos, to help them develop their phone application, Kuiky. Borrero then allegedly misappropriated those trade secrets to create his own phone application, Rappi. Rappi first launched in Colombia and is now available throughout Latin America (but not the United States). It connects users to various products and services, like groceries or food from restaurants, which independent contractors deliver to Rappi users. The Rappi defendants are Borrero; Rappi S.A.S., a Colombian corporation headquartered in Bogotá that appears to run the application; and Rappi, Inc., Rappi S.A.S.'s parent company that is incorporated in Delaware.

       This is a Colombian dispute, involving Colombian citizens, Colombian trade secrets, and alleged misappropriation to create an application that serves markets in Latin America. California's relevance to, and interest in, the dispute is peripheral at best. Accordingly, the

motion to dismiss for *forum non conveniens* must be granted. In the alternative, the case would be dismissed for lack of personal jurisdiction.

\*\*\*

"To prevail on a motion to dismiss based upon forum non conveniens, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015). A plaintiff's choice of forum is generally entitled to deference. But that deference is "far from absolute." *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir.1991). Indeed, a foreign plaintiff's choice of a United States forum is generally entitled to less deference because "it would be less reasonable to assume the choice of forum is based on convenience." *Ranza*, 793 F.3d at 1077; *see Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001). *Compare Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1104 (9th Cir. 2020); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011); *Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201 (9th Cir. 2009).

(1) Adequate Alternative Forum. An "alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano*, 643 F.3d at 1225. It is only in "rare circumstances"—when "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all"—that the adequacy requirement is not met. *Lockman*, 930 F.2d at 768.

Colombia is an adequate alternative forum. The plaintiffs do not argue that the defendants are not amenable to process in Colombia. In any event, Borrero and Rappi S.A.S. are clearly subject to Colombian jurisdiction, and Rappi, Inc. has agreed to submit to the jurisdiction of Colombian courts. The second element is also met because Colombia offers a "satisfactory remedy." The plaintiffs have only brought trade secrets claims, and nobody disputes that Colombia recognizes a cause of action for trade secret misappropriation. There is some disagreement about whether a two-year statute of limitations would apply in Colombia and thus bar any trade secret misappropriation action brought by the plaintiffs, but the defendants have

2

agreed to waive any statute-of-limitations defenses as a condition of dismissal. This cures the issue, and dismissal is conditioned on this waiver. *Carijano*, 643 F.3d at 1235 ("The danger that the statute of limitations might serve to bar an action is one of the primary reasons for the limitation on the court's discretion with respect to the application of the doctrine of forum non conveniens.").

The plaintiffs' primary counterargument is that the Colombia courts are not capable of adjudicating a significant commercial dispute. The plaintiffs complain that lengthy delays are likely, that many of the procedural mechanisms and discovery tools that make U.S. courts efficient are unavailable in Colombia, that there is a risk of corruption, and that there are compensation limits on the Colombian cause of action. But those concerns do not indicate that Colombia provides "no remedy at all." *Lockman*, 930 F.2d at 768; *see Lewis v. Liberty Mutual Insurance Co.*, 953 F.3d 1160, 1168 (9th Cir. 2020) ("We have long recognized that "dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery."); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006) (explaining that the critical adequacy inquiry is whether the forum provides "some remedy" for the wrong at issue); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001) (explaining that "a foreign forum will [not] be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong"); *Creative Technology, Ltd. v. Aztech System Pte, Ltd.*, 61 F.3d 696, 701-02 (9th Cir. 1995) ("A court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum.").

(2) Private & Public Interest Factors. Ordinarily, a plaintiff's choice of forum will not be disturbed unless the "private interest" and the "public interest" factors strongly favor trial in a foreign country. "[I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Lockman*, 930 F.2d at 767.

*Public Interest Factors.* Courts consider the following public interest factors: "(1) local

3

interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147.

These factors weigh in favor of dismissal. As to local interest, Colombia's interest is high. This is essentially a dispute between parties in Colombia, about whether certain trade secrets—which were created and shared in Colombia—were misappropriated to create an application that served markets in Colombia and (eventually) other countries Latin America. Colombia has a strong interest in ensuring that its businesses do not misappropriate trade secrets, and that its citizens are compensated for the theft of their trade secrets. The Colombian Attorney General's prosecution of a criminal action involving similar allegations is a sign of this interest. *See Ranza*, 793 F.3d at 1079 ("The Netherlands also has a strong interest in ensuring that the businesses operating within its borders do not engage in discrimination. The Dutch government's establishment of the ETC to enforce its equal protection laws exemplifies this interest, as does the ETC's considerable involvement in this very case."); *Lueck*, 236 F.3d at 1147 ("[T]he interest in New Zealand regarding this suit is extremely high. The crash involved a New Zealand airline carrying New Zealand passengers."); *Creative Technology*, 61 F.3d at 704 ("This is essentially a dispute between two Singapore corporations as to which of them was the original developer of the disputed sound card technology.).

The plaintiffs' main counterargument is that California has an interest in providing a forum for those harmed by the actions of its corporations. It's true that the Ninth Circuit has repeatedly recognized the state's "interest in deciding actions against resident corporations whose conduct in this state causes injury to persons in other jurisdictions." *Carijano*, 643 F.3d at 1232-33. But those cases are distinguishable—among the defendants were companies headquartered in California or American citizens. And conduct forming the basis of the disputes took place, in part, in California. *Id.* (finding a significant local interest when one defendant was a major U.S. company with its headquarters in California and interactions forming the basis of a claim took place in California); *see Boston Telecommunications*, 588 F.3d at 1212 (finding a

significant local interest when one defendant was an American citizen and part of the allegedly fraudulent conduct took place in California). This case is different. The defendants have submitted evidence indicating that Rappi, Inc. has no physical presence, officers, or employees in California. Nor does it appear to regularly conduct business in the state. Furthermore, as explained later in this order, to the extent misappropriation occurred, it likely occurred primarily or exclusively in Colombia—not in California. Thus, without more, the fact that the defendants "raised hundreds of millions of dollars from some of Silicon Valley's most high-profile venture capital investors" does not mean that California has a significant local interest in this dispute. "[T]he United States' interest in resolving this controversy and the relation of the jury community to this controversy are extremely attenuated . . . ." *Creative Technology*, 61 F.3d at 704. That interest is diminished further because of the criminal proceeding underway in Colombia, which raises a concern about this Court relitigating issues already decided in foreign proceedings. *Ranza*, 793 F.3d at 1079. Because the local interest in this lawsuit is comparatively low, the citizens of California should not be forced to bear the burden of this dispute. *Id.*; *Lueck*, 236 F.3d at 1147; *see also Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950-51 (9th Cir. 2017).

*Private Interest Factors*. Courts consider the following private interest factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Lueck*, 236 F.3d at 1145-46. Courts should look to any of the above factors that are relevant, considering them together to arrive at a balanced conclusion. *Id.*

It should be obvious, from what's already been stated, that most of these factors favor litigating the dispute in Colombia rather than California. The primary point of contention is whether the residence of witnesses and access to evidence favors California or Colombia. In making such an assessment, "a court's focus should not rest on the number of witnesses or quantity of evidence in each locale. Rather, a court should evaluate "the materiality and

importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum." *Id.* at 1146; *see Ayco Farms*, 862 F.3d at 950-51 ("[T]he crux of the parties' dispute concerns a contract that was negotiated, signed, and allegedly violated in Mexico").

According to the complaint, the defendants misappropriated two categories of trade secrets in developing Rappi. First, they allegedly "direct[ly] cop[ied] . . . the wire frames Imaginamos developed under their original contract with the Kuiky creators" in producing the "early versions of the Rappi app." Second, they allegedly used the business plan and market research that "the Kuiky creators shared with Mr. Borrero and Imaginamos" to create "the Rappi business model." The complaint alleges that the Kuiky business plan was focused on using "messengers" to make deliveries to app users and that the defendants misappropriated that business plan when they "turn[ed] their idea for a grocery delivery app into the current errand-running model" that uses independent contractors. If, as the plaintiffs argue, Rappi shifted from a grocery delivery app to an independent-contractor-based business model while the defendants were at Y Combinator, then some witness and evidence might be in California. However, if the defendants are right that the crux of the alleged misappropriation pre-dates Y Combinator, then these factors weigh in favor of Colombia.

As to Kuiky's wire frames, any alleged misappropriation very likely occurred before the defendants reached Y Combinator. Again, the complaint alleges that "early versions" of Rappi are a direct copy of Kuiky's wire frames, and the plaintiffs admit that Rappi launched in 2015. The natural conclusion is that these "early versions" were those in use when, or shortly after, Rappi launched—when the application was only being developed in Colombia. The plaintiffs do not suggest otherwise. Accordingly, for the purposes of this motion, it is safe to assume that the witnesses and evidence implicated by the alleged misappropriation of wire frames in Rappi's early structural design are located in Colombia.

As to Kuiky's business plan, the evidence in this record strongly suggests that Rappi employed a model focused on independent contractors before the defendants traveled to

California in 2016, again making Colombia the likely site of key evidence and witnesses. A trademark application for Rappi, filed with the Colombian government in August 2014, describes the "products and/or services" associated with the Rappi trademark as "the presentation of products in any medium for retail sale;" "package distribution;" "distribution or delivery of products;" and "mail or merchandise courier service." And the trademark itself is a man delivering what appears to be a meal. This suggests that Rappi began contemplating a messenger-based delivery model before attending Y Combinator in 2016. More notably, Paba himself admits that, "three months [after they terminated their relationship with Imaginamos in April 2015], we found out about a similar App called Rappi, being launched in the Colombian market, and shortly after in México." It is difficult to believe that the plaintiffs would have identified Rappi as being similar to Kuiky in 2015 if Rappi were simply a grocery delivery app. And finally, the defendants have submitted evidence indicating that their "extensive factual investigation" of similar allegations for the criminal proceeding in Colombia involved evidence and witnesses located in Colombia. The plaintiffs have done little to undermine these conclusions; instead, they repeatedly assert that the relevant witnesses and evidence are in California without providing any supporting evidence. On the whole, the record indicates that the crucial witnesses and evidence related to the alleged misappropriation of the business plan are likely in Colombia. *Ayco Farms*, 862 F.3d at 950-51 ("Ayco has offered no plausible challenge to any of these findings of fact."). And even if this Court were required to accept as fact the plaintiffs' speculation about what happened at Y Combinator, all the remaining factors discussed in this ruling would support dismissal for *forum non conveniens*.[1]

---

[1] It is true that the plaintiffs submitted the names of four witnesses in the United States. But they fail to explain with any specificity how those witnesses are important to their claim, simply arguing that Rappi completed "a series of funding deals . . . with individuals and corporations in California and other places in the United States. These deals . . . [are] with people that might have relevant information for the purpose of this claim . . . ." This conclusory argument is insufficient to counter the conclusion that the core witnesses and evidence are not, in fact, in California. *Cf. Ayco Farms*, 862 F.3d at 950–51 ("Ayco failed to identify any witnesses, documents, or evidence located in California."); *Boston Telecommunications*, 588 F.3d at 1209 ("The record reflects that Marshall explained with specificity how several of the witnesses who could testify in California were important to his claims against Wood, and which witnesses were

The residence of the parties and the forum's convenience to the litigants weigh strongly in favor of dismissal. The plaintiffs are residents of Colombia, as are Rappi S.A.S. and Borrero. Rappi, Inc. was incorporated in Delaware, but the defendants have submitted evidence that this company has no physical presence in the United States beyond a mailbox in California. The plaintiffs' main counterargument is that neither Borrero nor Rappi S.A.S. had any issues coming to California to attend Y Combinator, to set up Rappi, Inc., and to fundraise. But it is one thing to come to California for a couple months to boost a new business venture; it is quite another to be subject to litigation in the state while operating an established business in another country. Accordingly, these factors weigh strongly in favor of dismissal. *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009).

The enforceability of a judgment also weighs in favor of dismissal. According to the defendants, if the parties sought to enforce a foreign judgment in Colombia, they would have to obtain a declaration of enforceability from Colombia's Supreme Court of Justice, which requires showing that the judgment meets various requirements and can, on average, take between 4 to 6 years to complete. The plaintiffs do not dispute this. In contrast, a Colombian judgment would presumably be enforceable in California because of the Uniform Forum-Country Money Judgments Recognition Act. Cal. Code. Civ. Pro. §§ 1713 et seq.; *see also Carijano*, 643 F.3d at 1231-32 ("California generally enforces foreign judgments, as long as they are issued by impartial tribunals that have afforded the litigants due process."); *Polak v. Perform Media Inc.*, 2019 WL 6448945, at *2 (C.D. Cal. Aug. 5, 2019); *Eastco International Corp. v. Tecma Baja LLC*, 2018 WL 6248549, at *5 (S.D. Cal. Nov. 29, 2018).

As to other practical problems relating to trial, there are two noteworthy issues favoring dismissal. First, the parties would presumably need to translate key documentary evidence (including the information exchanged by Imaginamos and the plaintiffs, which includes the alleged trade secrets) as well as crucial testimony into English. Indeed, nearly all evidence

---

most vital to his case.").

submitted in relation to this motion—from both parties—had to be translated from Spanish. If there are significant documents in English, the plaintiffs have failed to specify with any particularity what they might be and their significance to the case. Accordingly, the cost of translation appears much higher here as compared to Colombia. *Cf. Global Commodities*, 972 F.3d at 1111 ("Most of the key documentary evidence, although originally in Spanish, has already been translated into English."); *Boston Telecommunications*, 588 F.3d at 1210 ("[I]t is equally true that the numerous documents in languages other than Slovak would need to be translated for a Slovakian court. Similarly, evidence was before the district court that many potential witnesses were fluent in English, but some were fluent in Slovak. Thus, the district court properly concluded that the inconvenience and costs of translation for live witness testimony would likely affect both parties in either forum.").

Second, the related dispute pending in Colombia weighs in favor of dismissal. Indeed, the defendants claim, and the plaintiffs do not dispute, that a criminal action is proceeding in Colombia based on largely the same allegations. Apparently, the defendants have already conducted a factual investigation of those claims and submitted a response in October 2020. *Lueck*, 236 F.3d at 1147 ("[T]he fact is that both this and the Ansett lawsuits revolve around the causes of the accident. Therefore, a significant number of the same witnesses will be needed in both proceedings and much the same evidence will have to be presented to both courts. . . Given the existence of the related proceedings, it is all the more clear that the private interest factors weigh in favor of dismissal."); *see also Ayco Farms*, 862 F.3d at 950-51.

\*\*\*

In the alternative, the case would be dismissed for lack of personal jurisdiction. The Court clearly lacks general jurisdiction over Rappi, Inc. To establish general jurisdiction, "the defendant must engage in 'continuous and systematic general business contacts'" in the forum state that "approximate physical presence." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Rappi, Inc. has a mailbox in San Francisco, but no offices, employees, officers, or assets in California. The

plaintiffs' main argument is that Rappi, Inc. has repeatedly identified the mailbox as its "principal place of business" on corporate forms submitted the Colombian and the United States government. But for the purposes of general jurisdiction, "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities"—the corporation's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). A "mail drop" is simply not enough. *Id.* at 97.

The Court also lacks specific jurisdiction over the defendants. The Ninth Circuit conducts a three-part inquiry to determine whether a nonresident defendant made sufficient "minimum contacts" with a forum to warrant an exercise of specific jurisdiction: (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice . . . ." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). "Where, as here, a case sounds in tort, we employ the purposeful direction test" for the first prong of the analysis. *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Under that test, a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *AMA Multimedia*, 970 F.3d at 1209.

The plaintiffs have failed to meet the second requirement. That requirement "asks whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). Here, the allegedly tortious action is the misappropriation of the Colombian plaintiffs' trade secrets to develop Rappi—an application designed to serve a market in Colombia and, as it gained popularity, markets in various other Latin American countries. Thus, it is hard to understand how the defendants' actions might be "expressly aimed at" California. *See Schwarzenegger*, 374 F.3d 797, 807 (9th Cir. 2004) ("Here, Fred Martin's intentional act—the creation and publication of the Advertisement—was expressly

aimed at Ohio rather than California. The purpose of the Advertisement was to entice Ohioans to buy or lease cars from Fred Martin and, in particular, to "terminate" their current car lease."); *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir.1988) (finding that the defendant's intentional act—the uttering of false statements about Sinatra in Switzerland—was expressly aimed at California because making the statements was "an event within a sequence of activities designed to use California markets for the defendant's benefit"); *cf. Calder v. Jones*, 465 U.S. 783, 789 (1984) ("In sum, California is the focal point both of the story and of the harm suffered.").

The plaintiffs assert that the misappropriation was, in fact, "aimed at" California because the defendants participated in Y Combinator, solicited investments in Silicon Valley, and established a U.S. parent company. But that makes little sense. According to that line of reasoning, every action taken within the United States to further develop Rappi would subject the defendants to specific jurisdiction. Given this record, the defendants' California-based activities are best understood as a sideshow, while Rappi's service of the market in Colombia and in other Latin American countries is the main act stemming from the alleged misappropriation.

\*\*\*

Accordingly, the case is dismissed on *forum non conveniens* grounds, with dismissal being conditioned on the defendants' waiver of statute-of-limitations defenses in any trade secret action the plaintiffs bring in Colombia. Alternatively, the case would be dismissed because the plaintiffs have failed to establish personal jurisdiction.

**IT IS SO ORDERED.**

Dated: June 25, 2021

_____
VINCE CHHABRIA
United States District Judge